## Knight v. Commonwealth.

(Decided December 11, 1925.)

### Appeal from Ohio Circuit Court.

Intoxicating Liquors—Evidence Held Sufficient to Sustain Conviction for Unlawful Possession.—In prosecution for having unlawful possession of liquor, testimony of witness, who had seen gallon jug on counter in accused's store which contained liquid which looked and smelled like whiskey, and of character witnesses that accused had reputation of being a bootlegger, held sufficient to sustain conviction.

HEAVRIN, HEAVRIN & HEAVRIN for appellant.

FRANK E. DAUGHERTY, Attorney General, and G. D. LITSEY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This is an appeal from a judgment of the Ohio circuit court, rendered upon the verdict of a jury by which the appellant, P. W. Knight, was found guilty of the offense, duly charged by indictment, of unlawfully having in his possession intoxicating liquor, and his punishment fixed at a fine of $150.00, and imprisonment of 30 days in jail.

The single ground urged by his counsel for the reversal of the judgment of the trial court is, that the verdict of the jury was and is unsupported by and contrary to the evidence, which contention will require of us consideration of the evidence. The only witness introduced by the Commonwealth who claimed to have seen the appellant in possession of the intoxicating liquor described in the indictment, was Oscar Q. Taylor, a farmer of Ohio county, whose testimony, as given on the trial, was substantially as follows: That on February 14, 1924, after taking to a landing on Green river, called "Green River Post Office," a lot of shoats for shipment by boat, and arranging through another person for their shipment upon the arrival of the boat, he left the landing about sunrise with the intention of returning to his home, but before starting for home went to a store then owned by the appellant, and in which the Green river post office was kept, for the purpose of mailing a letter, and that upon entering the store and post office, which adjoined and was attached to the residence of the appellant, the witness saw on the counter of the store a gallon glass jar, or jug, filled to about two-thirds of its capacity with a liquid having the appearance of moonshine whiskey, and which, upon more closely approaching it, he discovered from its odor to be moonshine whiskey. According to the further testimony of the witness when he entered the store the jar of moonshine whiskey was uncovered, or without a stopper, which made the odor of its contents and the fact that it was moonshine whiskey easily discoverable through the sense of smell. That when the witness entered the store its only occupant was a child, the daughter of the appellant, who upon observing his attention fixed on the jar of whiskey removed it from the counter and placed it underneath the same, where it remained concealed from the view of the witness during his further stay in the store.

The witness also testified that while he was in the store and when, or about, the time the girl was removing the jar of whiskey from the counter, the appellant entered it through a doorway opening from his residence, where, judging from his appearance, he had just gotten out of bed. That by invitation of the latter he went with him to a room of his residence containing a fire and there had with him a brief conversation; and that though the appellant and his daughter were the only persons he saw in the store, evidence of the recent presence there of a number of other persons was furnished by the position of quite a number of chairs around the stove and the great quantity of fresh whittling shavings on the floor under and about the chairs.

The final interrogation of this witness obtained from him the additional testimony, that he had known the appellant twenty years and was well acquainted with his general reputation, which is, and was at the time of the discovery by the witness of the whiskey in his store, that of a person engaged in the "bootlegging" of whiskey. The foregoing testimony of O. Q. Taylor as to the general reputation of the appellant was positively corroborated by that of four other witnesses for the Commonwealth, viz.: N. M. Taylor, Q. M. Benton, Roy Benton and J. N. Berryman.

The appellant, upon taking the witness stand in his own behalf, denied his possession, or the presence in his store, of a gallon glass jar containing moonshine whiskey, as testified by the Commonwealth's witness, O. Q. Taylor, or that he was then, or at any other time, "bootlegging" or otherwise conducting an unlawful traffic in such liquor, or other intoxicating drinks. He admitted the visit of Taylor to the store and post office on the occasion named by the latter; and also that he kept in the store several glass jars or like jugs that Taylor had claimed to have seen, but stated that they were used by him in warm weather and when the water in his cistern got low, for obtaining from Green river drinking water for his family, which was kept cool by suspending in the cistern the glass jars containing it. It was further testified by the appellant that he sometimes kept gasoline in the gallon glass jars, and that if the witness, O. Q. Taylor, saw on the counter of his (appellant's) store such a jar containing a

liquid having the appearance of moonshine whiskey, such liquid was only gasoline.

The appellant's daughter was not introduced by him as a witness. Her age, it is true, is not disclosed by the evidence and she was casually described by the witness, O. Q. Taylor, as a child. But if, as shown by the uncontradicted testimony of Taylor on that point, she was of sufficient age and strength to lift the gallon jar with its contents from the counter and set it thereunder, it would not be going beyond the bounds of reason to indulge the presumption that her age and discretion were sufficiently developed to enable her to understand the nature of an oath and intelligently testify as a witness. And when it is considered that if the glass jar removed by her from the counter contained gasoline, instead of moonshine whiskey as testified by Taylor, and that she alone knew that fact and could truthfully so testify and thereby contradict the testimony of Taylor, the paramount importance of her testimony to the appellant may be appreciated.

The appellant did, however, introduce three witnesses, Ed Darch, Jess Beggarly and C. L. Elliott, all of whom testified that though they were frequent visitors at the store in which the Green River post office was kept while the appellant was postmaster and owner of the store, they had never seen any whiskey there, or known of its being kept in glass jars, but had seen gasoline in a glass jar or jars on a shelf of the store. Each of these witnesses, however, admitted that he was unacquainted with the general reputation of the appellant and none of them contradicted the testimony given by the Commonwealth's witnesses with respect to his reputation.

It is patent from what has been said of the evidence that it fails to sustain the ground upon which the appellant relies for the reversal of the judgment of conviction. Indeed, it more strongly supports the verdict and judgment than is usual in cases of this character, the defenses in which are often more artful than meritorious. We do not mean to say that the evidence is not in some material respects conflicting, but that the evidence of the Commonwealth is more consonant with reason and more strongly corroborated by the circumstances attending the transaction constituting the offense charged, than is that of the appellant. It is true that the appellant's unlawful possession of the liquor was shown by the testimony

of a single witness, O. Q. Taylor, which was in the main contradicted by that of the appellant alone. But, saying nothing of the corroborating circumstances, when to the reasonableness of the testimony of Taylor, a disinterested and unimpeached witness, is added the uncontradicted substantive testimony of the several witnesses as to the bad reputation of the appellant, it may well be said that little doubt can remain of the correctness of the verdict returned by the jury.

The view we entertain of this case is thus expressed in the following excerpt quoted from the case of Tooley v. Comlth., 208 Ky. 527:

"Notwithstanding the conflicting nature of the evidence, it was the province of the jury to determine from it as a whole the truth of the matter. In doing which it was their right to accept the testimony of the one witness for the Commonwealth and reject that of the appellant and his several witnesses, and, in view of the inconsistent and unreasonable character of the evidence presented by the testimony of the appellant and his witnesses, and the extent to which they were contradicted, it cannot occasion surprise that it failed to impress the jury.

Again in the case of Fairchild v. Comlth., 208 Ky. 531, it is said:

"As in this case the jury accepted the positive testimony of the one witness for the Commonwealth, whose reputation for truth and veracity was unattacked, and much of that of the appellant's witnesses was of a negative character, the verdict cannot be assailed or set aside upon the ground that it is unsupported by or flagrantly against the evidence."

It follows from what has been said that neither in overruling the appellant's motion for a directed verdict, nor in refusing him a new trial upon the ground that the verdict was unsupported by or flagrantly against the evidence, did the trial court commit error. Wherefore, the judgment is affirmed.